UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KERI ALICIA DEGUZMAN,<br><br>                                    Plaintiff,<br><br>v.<br><br>ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY,<br><br>                                    Defendant. | Case No.:  19cv1328-BLM<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS**<br><br>**[ECF Nos. 18 and 20]** |

Plaintiff Keri A. Deguzman brought this action for judicial review of the Social Security Commissioner's ("Commissioner") denial of her claim for Social Security Disability Insurance and Supplemental Security Income benefits.  ECF No. 1.  Before the Court are Plaintiff's Opening Brief [ECF No. 18 ("Pl.'s Mot.")], Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's motion [ECF No. 20-1 ("Def's Mot.")], and Plaintiff's Reply [ECF No. 23 ("Pl.'s Reply")].  For the reasons set forth below, Plaintiff's motion is **GRANTED IN PART AND DENIED IN PART** and Defendant's Cross-Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

///

///

19cv1328-BLM

## PROCEDURAL BACKGROUND

On July 21, 2015, Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income, alleging disability beginning on May 2, 2011.  See Administrative Record ("AR") at 10.  The claims were denied initially on January 7, 2016, and upon reconsideration on April 1, 2016, resulting in Plaintiff's request for an administrative hearing on May 20, 2016.  Id.

On January 3, 2018, a hearing was held before Administrative Law Judge ("ALJ") Kevin W. Messer.  Id. at 10-22.  Plaintiff and an impartial vocational expert ("VE"), Mr. John J. Komar, testified at the hearing.  After the hearing, Plaintiff underwent an orthopedic CE examination and the results were admitted to the record.  Id. at 10.  Two additional documents were submitted after the hearing and the ALJ also admitted them into the record.  Id.  In a written decision dated June 15, 2018, ALJ Messer determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from May 2, 2011 through the date of the ALJ's decision.  Id. at 22.  Plaintiff requested review by the Appeals Council.  Id. at 1.  In a letter dated May 13, 2019, the Appeals Council denied review of the ALJ's ruling, and the ALJ's decision therefore became the final decision of the Commissioner.  Id. at 1-3.

On July 16, 2019, Plaintiff filed the instant action seeking judicial review by the federal district court.  See ECF No. 1.  On December 5, 2019, Plaintiff filed an Opening Brief alleging that "[t]he ALJ committed legal error in weighing the opinion of Plaintiff's treating source, Christine Remigio, FNP, resulting in an erroneous RFC," and that the ALJ failed to properly consider "Plaintiff's combination of impairments in the RFC assessment" and "Plaintiff's subjective complaints as required by the Agency's regulations and rulings."  Pl.'s Mot. at 8-9. Defendant filed a timely Cross-motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment asserting that "Plaintiff Fail[ed] To Establish Reversible Error In The ALJ's Consideration Of Evidence From Nurse Practitioner Christine Remigio, F.N.P.[,]" "[t]he ALJ Properly Considered Plaintiff's Obesity In Determining Plaintiff Could Perform A Reduced Range Of Light Work[,]" and "[T]he ALJ properly considered Plaintiff's Subjective Allegations."  Def's Mot. at 4-16.  Plaintiff replied by reiterating the arguments raised in her motion.  Pl.'s

19cv1328-BLM

1  Reply.

2  **ALJ's DECISION**

3          On June 15, 2018, the ALJ issued a written decision in which he determined that Plaintiff

4  was not disabled as defined in the Social Security Act.  AR at 10-22.  Initially, the ALJ determined

5  that Plaintiff had not engaged in substantial gainful activity during the relevant time period (since

6  May 2, 2011).  Id. at 12.  He then considered all of Plaintiff's medical impairments and

7  determined that the following impairments were "severe" as defined in the Regulations: "obesity,

8  dysfunction of major joints; degenerative disc disease; ankylosing spondylitis or other

9  spondyloathropathies; affective disorders; anxiety disorders; and ADHD (20 CFR 404.1520(c)

10 and 416.920(c))."  Id.  At step three, the ALJ found that Plaintiff's medically determinable

11 impairments or combination of impairments did not meet or medically equal the listed

12 impairments.  Id. at 13.  At step four, the ALJ considered Plaintiff's severe impairments and

13 determined that her residual functional capacity ("RFC") permitted her

14
15          to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except
            never climbing ramps/stairs, never climbing ladders/ropes/scaffolding, occasional
16          balancing, stooping, kneeling, crouching, and never crawling; limited to no more
            than occasional pushing/pulling in operation of foot controls with lower left
17          extremity; must avoid concentrated exposure to vibration and hazards such as
            moving machinery and unprotected heights; limited to understand, remember, and
18          carry out simple routine, repetitive tasks and simple work related decisions; only
            occasionally tolerate changes in the work setting and respond appropriately.
19
20
21 Id. at 14-15.  The ALJ found that while Plaintiff's "medically determinable impairments could

22 reasonably be expected to cause the alleged symptoms," Plaintiff's "statements concerning the

23 intensity, persistence and limiting effects of these symptoms are not entirely consistent with all

24 the medical evidence and other evidence in the record."  Id. at 16.  The ALJ further determined

25 that while Plaintiff is unable to perform past relevant work, considering her age, education, work

26 experience, and residual functional capacity ("RFC"), there are jobs that exist in significant

27 numbers in the national economy that Plaintiff can perform.  Id. at 20-21.

28 ///

19cv1328-BLM

**STANDARD OF REVIEW**

Section 405(g) of the Social Security Act permits unsuccessful applicants to seek judicial review of the Commissioner's final decision.  42 U.S.C. § 405(g).  The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error.  Id.; see also Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004).

Substantial evidence is "more than a mere scintilla, but may be less than a preponderance."  Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001) (citation omitted).  It is "relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion."  Id. (citation omitted); see also Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003).  "In determining whether the [ALJ's] findings are supported by substantial evidence, [the court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citations omitted).  Where the evidence can reasonably be construed to support more than one rational interpretation, the court must uphold the ALJ's decision.  See Batson, 359 F.3d at 1193.  This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts.  See Lewis, 236 F.3d at 509.

Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision.  See Batson, 359 F.3d at 1193.  Section 405(g) permits a court to enter judgment affirming, modifying, or reversing the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court may also remand the matter to the Social Security Administration for further proceedings.  Id.

**DISCUSSION**

Plaintiff argues that the ALJ failed to properly (1) weigh the opinion of her treating medical source which led to an incorrect RFC, (2) consider Plaintiff's combination of impairments in his RFC assessment, and (3) consider Plaintiff's subjective complaints.  Pl.'s Mot. at 1.

Defendant contends that (1) Plaintiff has not demonstrated that the ALJ's consideration of her treating source amounts to reversible error, (2) the ALJ properly considered Plaintiff's obesity, and (3) the ALJ properly considered Plaintiff's subjective allegations. Def's Mot. at 4-15.

### A.    Treating Medical Source

Plaintiff argues that the ALJ erred in evaluating her RFC because he improperly rejected the opinion of her treating source, Family Nurse Practitioner ("FNP") Christine Remigio. Pl.'s Mot. at 8. Defendant contends that the ALJ properly weighed the opinion of FNP Remigio. Def's Mot. at 4.

### 1.    Relevant Law

Only acceptable medical sources can diagnose and establish that a medical impairment exists. Social Security Rule ("SSR")[1] 06-03p. At the time Plaintiff filed her claim, SSR 06-03p defined "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech pathologists. Nurse practitioners were not included in the definition.[2] Id. Healthcare providers not considered acceptable medical sources are considered "other sources" and their opinions can be considered by an ALJ to establish the severity of an individual's impairments or the impact of those impairments on an individual's ability to work. Id. An ALJ may not reject the competent testimony of "other" medical sources without comment. However, to reject the opinion of "other" medical sources, an ALJ must only provide a reason that is germane to that witness. Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012). Germane reasons may include a finding that the testimony conflicts with the witness's own earlier assessment or with the opinion of other medical specialists, or a finding that the witness was biased. Leroux v. Berryhill, 2018 WL

---

[1] Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, in accordance with 20 C.FR. 402.35(b)(1), and are binding as precedents in adjudicating cases.

[2] The Social Security Regulations have since changed and for claims filed after March 27, 2017, nurse practitioners are acceptable medical sources. See 20 C.F.R. § 416.902.

19cv1328-BLM

1  1258206, at *10–11 (N.D. Cal., Mar. 12, 2018) (citing <u>Dale v. Colvin</u>, 823 F.3d 941, 944-45 (9th

2  Cir. 2016)).   In rejecting such testimony, the ALJ need not "discuss every witness's testimony

3  on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for

4  rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting

5  similar testimony by a different witness." <u>Molina</u>, 674 F.3d at 1114.

6      2.   <u>Analysis</u>

7      The ALJ gave little weight to the opinion of FNP Remigio. <u>Id.</u> at 20.  The ALJ made this

8  decision because FNP Remigio's conclusions were not consistent with (1) the totality of the

9  objective medical evidence, (2) "the bulk of the physical examination results[,]" and (3) Plaintiff's

10 daily activities. <u>Id.</u>  The Court will consider each reason to determine if it constitutes a legitimate

11 germane reason.

12     a.   <u>Objective Medical Evidence</u>

13     The ALJ gave little weight to FNP Remigio's opinion "because the conclusions [we]re not

14 consistent with the totality of the objective medical evidence, particularly the findings of

15 orthopedic CE Thomas Sabourin, M.D., who found greater exertional functional capacity than

16 FNP Remigio." <u>Id.</u> at 20.

17     <u>Family Nurse Practitioner Christine Remigio</u>

18     FNP Remigio began treating Plaintiff on February 17, 2016. <u>Id.</u> at 1065.  Plaintiff came

19 into the health clinic that day for a pneumonia vaccine and for help with her chronic low back

20 and shoulder pain which Plaintiff described as an eight out of ten on the pain scale. <u>Id.</u> at 934.

21 Plaintiff's examination showed that (1) she was obese, but not in acute distress, (2) her neck

22 was supple, with no cervical lymphadenopathy or thyroid nodules, (3) her heart rhythm and rate

23 were regular with normal S1S2, (4) Plaintiff's lungs were clear to auscultation bilaterally with no

24 wheezes, rales or rhonchi, (5) she had normal bowel sounds and her abdomen was soft,

25 nontender and nondistended, (6) she had chronic generalized muscle and joint pain, (7) there

26 was no clubbing, cyanosis, or edema, and (8) Plaintiff was alert and oriented with good judgment

27 and insight. <u>Id.</u> at 935.  FNP Remigio noted that Plaintiff was under the care of several specialists

28 for some of her conditions including chronic kidney disease ("CKD") and ankylosing spondylitis.

19cv1328-BLM

Id. at 935-936.  Plaintiff was told to follow-up in two weeks.  Id. at 936.  FNP Remigio saw Plaintiff for a follow-up appointment on May 4, 2016.  Id. at 926.  Her general examination of Plaintiff was the same as the previous appointment except she had scaly skin with erythematous patches on her chest and trunk and showed normal muscle tone, normal joints without redness, tenderness, or swelling.  Id. at 927.  Plaintiff denied joint pain and FNP Remigio counseled Plaintiff on a healthy diet and exercise.  Id. at 927-928.  FNP Remigio saw Plaintiff again on August 1, 2016 to provide her with lab results.  Id. at 921. Her examination was the same as before with a decreased range of motion in Plaintiff's back and no more skin rash, and FNP Remigio counseled Plaintiff on a healthy diet and exercise.  Id. at 921-923.  Plaintiff was considered to be pre-diabetic and reported that she did not exercise due to pain/arthritis.  Id. at 924.  Plaintiff followed up with FNP Remigio again on November 2, 2016 for a shingles vaccine.[3]  Id. at 918.  FNP Remigio saw Plaintiff again on February 3, 2017 to refill a prescription and on March 9, 2017 for acupuncture for stress and depression.[4]  Id. at 914, 908-910.  FNP Remigio assessed Plaintiff as suffering from anxiety with depression, a BMI of 39.0-39.9, and needing dietary and exercise counseling.  Id. at 909-910.  FNP Remigio saw Plaintiff on April 6, 2017 for complaints of anxiety and back pain and for follow-up acupuncture.  Id. at 905.  Nurse Remigio's physical examination of Plaintiff again revealed that Plaintiff was obese, but not in acute distress, there was back and multiple joint tenderness, and that Plaintiff was alert and oriented with good judgment and insight.  Id. 906.  Nurse Remigio advised Plaintiff to continue acupuncture for her "lumbosacral and upper back pain spreading over her traps" and to follow-up with rheumatology.  Id. at 907.  She noted that Plaintiff complained that her low back was very tense and inhibited her sleep.  Id.  FNP Remigio saw Plaintiff on April 20, 2017 for complaints of multiple joint pain and anxiety.  Id. at 902.  Plaintiff's physical examination results

---

[3] Plaintiff had normal muscle tone, normal joints without redness, tenderness or swelling.  AR at 919.

[4] Plaintiff had normal muscle tone, normal joints without redness, tenderness or swelling.  AR at 909, 916.

19cv1328-BLM

were the same as her previous appointments without the back pain.  Id. at 902-904.  FNP Remigio saw Plaintiff on October 18, 2017 for a Hep A and flu vaccine.  Id. at 892.  Plaintiff's physical examination showed normal muscle tone, normal joints without redness, tenderness or swelling.  Id. at 893.

On January 19, 2018, FNP Remigio completed a Physical Residual Functional Capacity Questionnaire on behalf of Plaintiff.  Id. at 1065.  In the questionnaire, FNP Remigio listed Plaintiff's diagnoses as ankylosma spondylitis, arthritis, ADHA, CKD, anxiety and depression and gave her a prognosis of fair-poor.  Id.  FNP Remigio noted that Plaintiff suffers from chronic pain (multiple joint pain in her neck, shoulders, and back), dizziness, and fatigue.  Id.  FNP Remigio found that Plaintiff is not a malingerer, her impairments have lasted or can be expected to last for at least twelve months, and emotional factors contribute to the severity of Plaintiff's symptoms and functional limitations.  Id.  FNP Remigio concluded that Plaintiff's symptoms would be severe enough to interfere with her attention and concentration for at least 25% of a standard work day and that Plaintiff (1) can sit for ten minutes before needing to get up, (2) can stand for five minutes before needing to sit down or walk around, (3) can sit and stand for less than two hours of an eight hour work day, (4) must walk around during the day every twenty minutes for five minutes at a time, (5) must be able to alternate positions at will from sitting, standing, or walking, (6) will sometimes (three times during an eight hour shift) need to take unscheduled breaks during her work day, (7) should elevate her legs with prolonged sitting for fifteen to thirty minutes and if working a sedentary job, for at least four hours, (8) can rarely lift ten pounds or less and can never lift twenty or fifty pounds, and (9) can rarely look down, turn her head right or left, look up, hold her head in a static position, twist, stoop, crouch/squat, climb ladders, or climb stairs.  Id. at 1065-1067.  FNP Remigio noted that Plaintiff had significant limitations with reaching, handling, or fingering and could use her left and right hands to grasp, turn, or twist objects 50% of the time, for fine manipulations 60% of the time, and reach with her arms 50% of the time.  Id. at 1068.  FNP Remigio further noted that Plaintiff is likely to have good days and bad days and to be absent from work as a result of her impairments or treatments more than four days per month.  Id.

19cv1328-BLM

### Dr. Sabourin

Dr. Sabourin performed an orthopedic consultation of Plaintiff on February 8, 2018 at the request of the Department of Social Services Disability and Adult Programs.  Id. at 1070. Plaintiff's chief complaints at the time of the examination were of pain in the neck, shoulders, elbows, wrists, hands, upper back, lower back, hips, chest, knees, and feet.  Id.  Plaintiff's illnesses include Irritable Bowel Syndrome, ADHD, lymphadenopathy, psoriasis, depression, anxiety, chronic kidney disease, and high blood pressure. Id. at 1071.   Dr. Sabourin's examination found that Plaintiff was well nourished, obese, in no acute distress and oriented as to time, place, and person and that her station and gait were satisfactory, and she had no difficulty getting on the examination table or in and out of her chair.  Id. at 1072.  Plaintiff had generalized mild tenderness in the neck, but no deformity of the neck or palpable spasm.  Id. Dr. Sabourin was unable to fully evaluate Plaintiff's lumbar spine as she refused to do forward flexion or other back range of motion, but Dr. Sabourin did note that Plaintiff's hips were satisfactory and that she moved her back with more extension than test results showed during the informal part of the examination.  Id.   Plaintiff's range of motion in her shoulders was grossly normal and painless with no tenderness, warmth, crepitus, instability, or swelling.  Id. at 1073.  Despite complaints of tenderness in her left elbow, Plaintiff tested negative for resisted extension of the wrist and had no redness or swelling in any of the joints showing rheumatoid arthritis.  Id. Plaintiff had a grossly normal range of motion of her wrists and there was no psoriatic swelling of Plaintiff's fingers or toes.  Id.  The range of motion of her hips was grossly normal and painless, apart from some back pain.  Id.  The range of motion for her knees, ankles, and feet was also grossly normal and painless.  Id. Plaintiff demonstrated normal motor strength in her upper extremities and normal sensation to light touch and pinprick in the upper and lower extremities bilaterally.   Id.   Dr. Sabourin's impression was that Plaintiff had a history of ankylosing spondylitis but without the significant normal deformities one would see of severe increased kyphosis of forward flexed neck and no shoulder or hip changes, a history of carpel tunnel syndrome with no objective evidence of carpal tunnel syndrome today, and mild lateral epicondylitis, left elbow.  Id. at 1074.  Dr. Sabourin felt that Plaintiff had early ankylosing

19cv1328-BLM

spondylitis, but not "the full stigma of that syndrome" and no findings of psoriatic arthritis or rheumatoid arthritis. Id. Dr. Sabourin found that (1) Plaintiff could lift or carry twenty pounds occasionally, and ten pounds frequently, (2) Plaintiff could stand and walk up to six hours of an eight-hour workday, (3) Plaintiff could sit for six hours of an eight-hour work day, (4) Plaintiff had push/pull limitations equal to her lift/carry limitations, (5) Plaintiff could climb, stoop, kneel, and crouch occasionally, and (6) Plaintiff had no manipulative limitations or need for assistive devices. Id. at 1074.

### Dr. S. Laiken

On October 28, 2015, Dr. Laiken, a State Agency Physician, reviewed Plaintiff's medical records and found that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds, stand or walk for four hours, and sit for six out of eight hours in a normal work day. Id. at 41. Dr. Laiken further concluded that Plaintiff was limited in ability to push and/or pull with lower extremities, had postural limitations, could never crawl, climb ramps, stairs, ladders, ropes, or scaffolds, and could occasionally balance, stoop, kneel, and crouch. Id. at 42. Dr. Laiken found that Plaintiff had no manipulative, visual, or communicative limitations, but did have environmental limitations. Id. The environmental limitations required that Plaintiff avoid concentrated exposure to vibration and moderate exposure to hazards such as heights and machinery, but there were no limits to her exposure to extreme cold, heat, wetness, humidity noise, fumes, odors, dusts, gases, and poor ventilation. Id. at 42-43.

### Dr. S. Lee

On March 23, 2016, Dr. Lee, a State Agency Physician, reviewed Plaintiff's medical records and drew the same conclusions as Dr. Laiken. Id. at 73-74, 89-90 (same).

### Dr. Mahmood Pazirandeh

On August 2, 2013, Plaintiff was examined by Dr. Mahmood Pazirandeh for a rheumatology consultation. Id. 490-493, 643-646 (same). Plaintiff complained of low back pain that has persisted since 2011, gets worse with prolonged sitting and walking, and leads to stiffness in bed and in the mornings. Id. at 490, 643. Dr. Pazirandeh noted that Plaintiff could open jars, write legibly, turn door knobs, reach overhead/back pocket, put on socks, and climb

stairs, but not walk long distances.  Id.  Dr. Pazirandeh assessed that Plaintiff had complicated medical problems including spondyloarthritis with FH of psoriasis, lupus or CTD, chronic renal failure, ADHD, obesity, and para aortic lymphadenopathy R/O igG4 related disease.  Id. at 492, 645.  Plaintiff had a follow-up appointment with Dr. Pazirandeh on September 6, 2013.  Id. at 493.  Dr. Pazirandeh noted that Plaintiff's facial rash cleared up and her test results for lupus or CTD were negative.  Id. at 494.  Dr. Pazirandeh further noted that Plaintiff did not have any tenderness or swelling in any of her joints and that the examinations of her joints, wrists, elbows, shoulders, hips, knees, ankles, and feet were normal with the exception of her right big toe.  Id. at 496.  Plaintiff's spinal examination showed a moderately reduced range of motion of the cervical and thoracic and lumber spine with moderate discomfort.  Id.  At her October 4, 2013 follow-up appointment with Dr. Pazirandeh, Plaintiff complained of knee pain, wrist, and low back pain.  Id. at 498.  Her exam revealed left knee effusion and popliteal cyst, but her right knee was less swollen.  Id.  Plaintiff followed up again with Dr. Pazirandeh on November 1, 2013 and complained of left knee pain and pain in her other joints and stiffness in the morning, low back pain, and difficulty bending and standing up.  Id. at 503.  Plaintiff received a B joint injection in both knees at this appointment.   Id. at 507-508.   At her March 21, 2014 follow-up appointment, Plaintiff reported that her left knee pain improved after receiving the injection, but was returning, she had gluteal pain that increased after prolonged sitting, walking bothered her knee, and she experienced one to five hours of morning stiffness.  Id. at 509.  Plaintiff saw Dr. Pazirandeh again on April 18, 2014, on May 2, 2014 when she got another knee injection, on June 20, 2014, and August 1, 2014 where she received a knee injection and Dr. Pazirandeh noted that Plaintiff's spondyloarthritis was improved on Humira.  Id. at 514, 519-520, 526, 530. Plaintiff followed up with Dr. Pazirandeh on October 3, 2014, December 8, 2014, January 19, 2015, February 23, 2015, April 6, 2015 where Plaintiff was advised to stop using Humira until her skin rash and throat pain were evaluated, and on June 11, 2015.  Id. at 532, 548, 549, 555, 562, 568, 569. The record does not contain an opinion from Dr. Pazirandeh regarding Plaintiff's abilities or limitations.

///

19cv1328-BLM

1

Analysis

2  Plaintiff argues that the ALJ failed to consider that FNP Remigio "had a longitudinal

3  treating relationship with Plaintiff since February 2016."   Pl.'s Mot. at 10.   The Federal

4  Regulations provide that "[r]egardless of its source, [the Commission] will evaluate every

5  medical opinion we receive."  20 C.F.R. §§ 404.1527(c) & 416.927(c)[5].  "[I]n deciding the weight

6  to give to any medical opinion[,]" we will consider the following factors: the examining

7  relationship, the treatment relationship (including the length and the nature and extent of the

8  treatment relationship), supportability, consistency, and specialization.   20 C.F.R. §

9  416.927(c)(1-5).   Even when presented with "[o]pinions from medical sources who are not

10  acceptable medical sources and from nonmedical sources," the ALJ "will consider these opinions

11  using the same factors," although "not every factor for weighing opinion evidence will apply in

12  every case because the evaluation of an opinion from a medical source who is not an acceptable

13  medical source or from a nonmedical source depends on the particular facts in each case."  20

14  C.F.R. §§ 404.1527(f)(1) & 416.927(f)(1); see also Revels v. Berryhill, 874 F.3d 648 (9th Cir.

15  2017).   "[A]fter applying the factors for weighing opinion evidence, an opinion from a medical

16  source who is not an acceptable medical source or from a nonmedical source may outweigh the

17  medical opinion of an acceptable medical source, including the medical opinion of a treating

18  source."  Id.  An ALJ must provide specific reasons for discounting the opinion of a non-

19  acceptable medical source and may not simply offer a conclusory statement.   See Popa v.

20  Berryhill, 872 F.3d 901, 907 (9th Cir. 2017); see also Seaman v. Berryhill, 2017 WL 3879084, at

21  *7 (D. Alaska Sept. 5, 2017).   Here, the ALJ failed to address all of the statutory requirements

22  including FNP Remigio's on-going examining and treating relationships with Plaintiff and the

23  medical support for FNP Remigio's opinion.  AR at 20.  Instead, the ALJ merely stated that FNP

24  Remigio's evaluation was not consistent with the objective medical evidence, especially the

25

---

26  [5] For claims filed before March 27, 2017, an ALJ applies the rules in Title 20 C.F.R. § 416.927 to
27  evaluate medical opinion evidence. 20 C.F.R. § 416.927 ("For claims filed … before March 27,
   2017, the rules in this section apply. For claims filed on or after March 27, 2017, the rules in §
28  416.920c apply.").

12

findings of Dr. Sabourin.  Id. at 20.  This failure is significant because FNP Remigio had an ongoing, lengthy examining and treating relationship with Plaintiff whereas Dr. Sabourin only examined Plaintiff on a single day as part of an SSA consultation and Drs. Laiken and Lee never examined Plaintiff.  The Court finds that the ALJ's conclusory statement as well as his failure to consider any factor apart from consistency when deciding what weight to apply to FNP Remigio's evaluation of Plaintiff constitutes error and therefore does not qualify as a "germane" reason for rejecting FNP Remigio's opinion.  See Aguilar v. Commissioner of Social Security, 2020 WL 1983744, at *5 (E.D. Cal., Apr. 27, 2020) (finding that the ALJ failed to properly evaluate the opinion of certified nurse practitioner Ms. Martin using the factors identified by the Regulations and SSR 06-03P and noting that "[t]he ALJ acknowledged that Ms. Martin was "the claimant's provider" but did not address the length of the treatment relationship between Ms. Martin and Plaintiff, or the fact that Ms. Martin treated Plaintiff on a monthly basis"); see also Monroe v. Commissioner of Social Security Administration, 2019 WL 6712055, at *5 (D. Ariz., Dec. 10, 2019) (noting that "the Ninth Circuit Court of Appeals has made clear that an ALJ must apply the § 404.1527(c) factors in evaluating opinions by other sources" and finding that "[b]ecause the ALJ did not analyze NP Nemati's opinion under the § 404.1527(c) factors, the ALJ erred.") (citing Revels, 874 F.3d at 655, 665).

### b. Physical Examination Results

Another reason stated by the ALJ for giving little weight to FNP Remigio's opinion was that it was "not consistent with the bulk of the physical examination results which generally showed normal gait and posture, normal muscle tone in the claimant's musculoskeletal system, and no clubbing, cyanosis or edema in extremities."  Id. at 20.  Plaintiff argues that the ALJ was required to "set out a detailed and thorough summary of the facts and conflicting clinical evidence" and state his interpretation thereof [before] making [his] findings" and that the RFC cannot be based only "upon the ALJ's lay assumptions."  Def.'s Mot. at 11-12.  Plaintiff further argues that the ALJ failed to explain how the medical records he noted contradict the findings of FNP Remigio and that the ALJ's speculative conclusions regarding the medical evidence "is insufficient to support the rejection of an uncontradicted medical opinion, and is not substantial

19cv1328-BLM

1  evidence to support the RFC." Id. at 12-13.

2  Defendant contends that the ALJ "reasonably found that the medical evidence
3  undermined Ms. Remigio's assessment of extreme functional limitations and better comported
4  with the greatly restricted degree of residual functioning delineated in Plaintiff's RFC." Def.'s
5  Mot. at 6. Defendant also contends that Plaintiff does not establish reversible error in the ALJ's
6  weighing of the medical evidence and notes that "the proper inquiry is not whether the ALJ
7  could have interpreted the evidence differently, [but] whether the ALJ's interpretation was
8  proper and supported by substantial evidence." Id. at 8. Defendant further contends that (1)
9  Plaintiff does not demonstrate that the evidence she highlights requires limitations beyond those
10 set in Plaintiff's RFC, (2) Plaintiff ignores her normal clinical findings, and (3) the ALJ did not
11 improperly rely on his own lay interpretations of the evidence. Id. at 8-9.

12  Inconsistency with the bulk of the physical examination results can be a germane reason
13 for rejecting the opinion of FNP Remigio. However, as with the above analysis, the ALJ failed
14 to comply with the statutory requirements as he failed to discuss any of the § 404.1527(c)
15 factors. The ALJ also failed to identify and explain the specific inconsistencies between FNP
16 Remigio's opinion and the bulk of the examination results. Instead, the ALJ stated that FNP
17 Remigio's conclusions regarding Plaintiff's functional capacity were not consistent with Plaintiff's
18 physical examination results which generally showed normal gait, posture, and muscle tone in
19 the musculoskeletal system and no clubbing, cyanosis or edema in the extremities. AR at 20.
20 In support, the ALJ cited to the medical examinations of Plaintiff's treating doctor, Dr.
21 Pazirandeh[6] and her treating doctors and nurses from Operation Samahan, Inc., including FNP
22 Remigio. Id. (citing Exs. B20F and B22F). However, the ALJ did not explain how the general
23 examination results were inconsistent with the limitations found by FNP Remigio. Id. For
24 example, the ALJ does not explain how Plaintiff's normal gait, posture, and muscle tone is

25  _____

26 [6] Although he discusses some of Dr. Pazirandeh's appointments with Plaintiff, the ALJ does not
27 state what weight, if any, he gave to Dr. Pazirandeh's findings. AR at 10-22. After a review of
   the AR, it also does not appear that Dr. Pazirandeh opined on Plaintiff's functional capacity. Id.
28 at 490-493, 643-646, 507-50509, 514, 519-520, 530, 532, 548-549, 555, 562, 568-569.

19cv1328-BLM

1   inconsistent with the reaching, handling, and fingering limitations found by FNP Remigio.   Id.

2   "To reject an opinion as inconsistent with the medical record, the 'ALJ must do more than offer

3   his conclusions.'"   Aguilar, 2020 WL 1983744, at *4.

4           The ALJ's failure to consider the § 404.1527(c) factors when deciding what weight to

5   apply to FNP Remigio's findings and failure to identify and explain specific inconsistencies

6   between FNP Remigio's findings and the "bulk of the physical examination results" constitutes

7   legal error and, therefore, does not constitute a germane reason for rejecting FNP's Remigio's

8   opinion.   See Aguilar, 2020 WL 1983744, at *5 (finding that the ALJ's analysis failed to achieve

9   the level of specificity that the Ninth Circuit requires and that the purported inconsistencies

10   between the physical examinations and objective medical evidence was not a germane reason

11   for discounting the findings of the FNP where the ALJ failed to explain how the examination

12   results were inconsistent with the limitations identified by the FNP and broadly cited to the

13   record instead of citing specific evidence).

14                      c.   Plaintiff's Daily Activities

15           The final reason provided by the ALJ for giving little weight to FNP Remigio's opinion was

16   that it was "not consistent with the claimant's daily activities, including preparing meals for

17   herself and her 14-year old son, performing chores such as cleaning and laundry, going for

18   walks, and driving her son to and from school and to baseball practice."   Id. at 20.   Plaintiff

19   argues that the ALJ failed to consider that FNP Remigio was opining on Plaintiff's ability to

20   perform work activities which differs from Plaintiff's activities in the household where Plaintiff

21   can stop and start when her symptoms require her to do so which would be impossible in a full-

22   time employment position.   Pl.'s Mot. at 13.

23           Defendant contends that the ALJ "properly found that Plaintiff's activities of daily living

24   undermined the extreme degree of limitations Ms. Remigio assessed."   Def.'s Mot. at 6.

25   Defendant notes that the ALJ's determination was supported by the findings of Plaintiff's treating

26   physician, Dr. Mahmood Pazirandeh.   Id. at 7.   Defendant further contends that Plaintiff's

27   argument ignores the fact that the activities Plaintiff herself describes demonstrate capabilities

28   that FNP Remigio found Plaintiff could never perform.   Id. at 9.

1    In reaching his decision, the ALJ fails to explain how FNP Remigio's opinion is inconsistent

2    with Plaintiff's activities of daily living.  AR at 20.  While Plaintiff does report the activities listed

3    by the ALJ, she also reports several limitations and qualifications regarding those activities that

4    the ALJ ignores.  Id. at 249-257, 1102-1117.  FNP Remigio concludes that Plaintiff can sit for

5    ten minutes before needing to get up and that she can stand for five minutes before needing to

6    sit or move around and that she can sit and stand or walk for less than two hours in an eight-

7    hour work day.  Id. at 1066.  This is not inconsistent with Plaintiff's reported daily activities.

8    Plaintiff testified that she enjoys walking, but that she can only walk for five minutes or less at

9    a time.  Id. at 1114-1115.  She also reported that she cannot sit for more time than it takes to

10   read one or two pages of a book and cannot sit long enough to complete a bead project.  Id. at

11   253.  Plaintiff drives her son to school and to baseball practice, but there is nothing in the record

12   stating how long those drives are or indicating that Plaintiff is required to sit for more than ten

13   minutes to accomplish those activities.  Accordingly, none of these activities described by Plaintiff

14   are inconsistent with FNP Remigio's conclusions regarding Plaintiff's ability to sit, stand, and

15   walk. In addition, Plaintiff reported that her cooking typically consists of cereal, smoothies, and

16   frozen dinners and that boiling pasta would be considered "major" cooking.  Id. at 251.  The

17   physical exertion required to pour a bowl of cereal or heat a frozen meal does not appear to be

18   inconsistent with FNP Remigio's conclusions that Plaintiff can stand for five minutes and rarely

19   carry ten pounds or less.  Finally, the ALJ states that FNP Remigio's report is inconsistent with

20   Plaintiff's daily activities of cleaning and laundry.  Id. at 20.    However, Plaintiff specifically

21   reported that she cannot complete a load of laundry in one sitting and that she needs help

22   unloading the dishwasher, emptying the clothes dryer, and cleaning the refrigerator.  Id. at 251,

23   1115.  It is unclear how performing these choses with assistance is inconsistent with the

24   limitations described by FNP Remigio and the ALJ does not provide an explanation.  Defendant

25   contends that Plaintiff reports activities that FNP Remigio states Plaintiff could never perform

26   such as driving which requires her to turn her head and climbing a flight of stairs to her

27   apartment.  Def.'s Mot. at 9-10.  Contrary to Defendant's contention that FNP Remigio asserted

28   that "Plaintiff could not turn her head in any direction or hold it still[,]" FNP Remigio asserted

that Plaintiff could <u>rarely</u> turn head right or left or hold head in static position, not that she could never do so.  AR at 1067.  Therefore, it is not clear that driving her son to school and practice or climbing the stairs to her apartment even twice a day is inconsistent with FNP Remigio's findings.  Accordingly, the Court finds that inconsistency between FNP Remigio's findings and Plaintiff's activities of daily living is not a germane reason for discounting FNP Remigio's opinion

### d.  Conclusion

For the reasons set forth above, the Court finds that the ALJ has failed to provide a germane reason for rejecting the opinion of FNP Remigio.  Accordingly, the Court **GRANTS** Plaintiff's motion on this ground and **DENIES** Defendant's motion.

## B.  **RFC Assessment**

Plaintiff argues that the ALJ failed to properly consider Plaintiff's combination of impairments in the RFC Assessment because he failed to properly evaluate Plaintiff's obesity under SSR 02-1p to determine whether Plaintiff's obesity caused any functional limitations and to explain that conclusion.  Pl.'s Mot. at 14.  Plaintiff asserts that this failure is important because Plaintiff suffers from degenerative joint disease in her knees and testified that she had difficulty standing, sitting, or walking for prolonged periods.  <u>Id.</u> at 15-16.  Plaintiff also argues that if the ALJ believed that Plaintiff's obesity did not result in limitations of her ability to stand and walk, he should have explained how he reached that conclusion.  <u>Id.</u> at 16.

Defendant contends that the ALJ properly considered Plaintiff's obesity in determining that Plaintiff could perform a reduced range of light work.  Def.'s Mot. at 10.  Defendant notes that the ALJ addressed Plaintiff's obesity but that the record did not show that the obesity itself or in combination with Plaintiff's other impairments caused limitations beyond those set forth in Plaintiff's RFC.  <u>Id.</u>  Defendant further contends that Plaintiff does not demonstrate any basis for reversal.  <u>Id.</u>

Social Security Ruling 02-1p governs the ALJ's duties when evaluating obesity.[7]  SSR 02-1p.  Pursuant to SSR 02-1p, although obesity is not a listed impairment, an ALJ must consider

---

[7] SSR 02-1p was rescinded and replaced by SSR 19-2p effective May 20, 2019.

19cv1328-BLM

1   the impact of a claimant's obesity on a claimant's other impairments even when a claimant does
2   not raise the issue.  See SSR 02-1p; see also Anita H. v. Saul, 2019 WL 4640574, at *5 (C.D.
3   Cal., Sept. 24, 2019) (citing Revised Medical Criteria for Determination of a Disability, Endocrine
4   System and Related Criteria, 64 F.R. 46122 (effective October 25, 1999) (delisting 9.09,
5   "Obesity," from the Listings); Celaya v. Halter, 332 F.3d 1177, 1181-82 (9th Cir. 2003); and
6   Social Security Ruling ("SSR") 02-1p (requiring an ALJ to consider the effects of obesity at several
7   points in the five-step sequential evaluation).  SSR 02–1p requires an ALJ to consider "the effect
8   obesity has upon the individual's ability to perform routine movement and necessary physical
9   activity within the work environment …. [as][t]he combined effects of obesity with other
10  impairments may be greater than might be expected without obesity."  Additionally, an ALJ
11  should "explain how [he or she] reached [their] conclusions on whether obesity caused any
12  physical or mental limitations." SSR 02–01p.

13       Plaintiff's initial claim for disability was filed on July 21, 2015 and did not list obesity as a
14  basis for her claim for disability. AR at 34-35 (listing severe back pain, osteoarthritis, rheumatoid
15  arthritis, lumbar spine impairment, bulging disc injury, cervical spine impairment, anxiety, and
16  renal disease).  In addition, with the exception of stating her height and weight [id. at 1103],
17  Plaintiff did not testify about her obesity during her hearing.  Id. at 1096-1125.  Despite these
18  failures, Plaintiff's obesity is noted numerous times in the medical record.  See AR at 427, 429,
19  454, 457, 548, 550, 585, 619, 757, 769, 771, 774, 903, 906, and 1072.  Apart from a few notes
20  from Dr. Alexiewicz that state Plaintiff's obesity may contribute to hyperglycemia [id. at 427
21  (January 15, 2015 visit), 757 (February 11, 2016 visit)], the records simply recognize that
22  Plaintiff is obese and/or that she was counseled on a heart healthy diet and exercise [id. at 457,
23  548, 550, 585, 628, 906, 909-910].  In his opinion, the ALJ acknowledged Plaintiff's obesity and
24  stated that

25      the claimant reported her height is 4'11" and weight is 190 pounds.  Treatment
26      notes show that in November 2015, [] the claimant's height was 4'10" and her
    weight was 178 pounds, equating to a BMI of 37.2 While the claimant's weight
27      may have aggravated the alleged impairments, there was no evidence that the
28      claimant's obesity, by itself or in combination with other impairments, cause the

19cv1328-BLM

1
2

claimant to have limitations that exceed the residual functional capacity above. Moreover, the above residual functional capacity takes into account the claimant's physical impairments.

3

4

Id. at 17-18 (internal citations omitted).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Defendant cites Burch v. Barnhart, 400 F.3d 676 (9th Cir. 2005) to support his position. Def.'s Mot. at 10.  The plaintiff in Burch appealed the district court's order denying her Social Security claim and argued that the ALJ failed to properly consider her obesity throughout his sequential disability analysis.  Burch, 400 F.3d at 682.  The plaintiff's argument relied in large part on the Court of Appeals decision in Celaya v. Halter, 332 F.3d 1177 (9th Cir. 2003), a case that is cited by Plaintiff in the instant matter.[8]  Pl.'s Mot. at 15.  The Burch court distinguished Celaya because the plaintiff in Burch was (most significantly) represented by counsel and her medical record did not indicate that her obesity exacerbated her other impairments.  Burch, 400 F.3d at 682.  The court in Burch found that the ALJ did not err in failing to consider plaintiff's obesity in the second step of the sequential analysis.  Id.  In reaching this decision, the court noted that plaintiff did "not specify which listing she believes she meets or equals" and "does not set forth any evidence which would support the diagnosis and finding of a listed impairment." Id. at 683.  Even on appeal, plaintiff failed to identify any evidence of functional limitations due to obesity and "[i]n fact, the only evidence in the record relating to her obesity are notes from doctors who observed weight gain, indicated that Burch is obese, and recommended that she participate in a medically supervised weight loss program."  Id.  The court also found that the ALJ did not err in step five of the analysis because he considered plaintiff's obesity in making his RFC determinations and vocational ability assessment.  Id.

23

24

Here, Plaintiff was represented by counsel at her hearing before the ALJ [AR at 10, 1096],

25

26

27

28

[8] In Celaya, the court found that the ALJ should have considered the plaintiff's obesity in his sequential analysis even though it was not explicitly raised by the plaintiff because (1) it was raised implicitly in plaintiff's report of symptoms, (2) the record made it clear that plaintiff's obesity was close to the listing criterion, and (3) plaintiff was *pro se* and the ALJ's observation of plaintiff along with the medical record should have alerted him to the need to develop the record regarding her obesity.  Celaya, 332 F.3d 1177 at 1182.

19cv1328-BLM

did not list obesity as a basis for her disability application [id. at 34-35], did not testify about her obesity at her hearing [id. at 1096-1125], and did not present evidence that her obesity caused any functional limitations or exacerbated her impairments.  In reaching his decision, the ALJ considered Plaintiff's obesity at step two of his analysis [id. at 12],  acknowledged Plaintiff's obesity and its potential impact on her impairments [id. at 17], specifically stated that he did not find any evidence that her obesity alone or in combination with other impairments created limitations beyond those set forth in the RFC [id.], noted that the RFC took into account all of Plaintiff's physical impairments [id. at 18.], and considered the findings of doctors who were aware of Plaintiff's obesity and made findings about her functional capacity.   Id. at 19 (considering the opinion of Dr Sabourin [id. at 1070-1081] who noted Plaintiff's obesity and found that she could stand, walk and sit for six hours of an eight-hour work day and the opinion of Dr. Laiken who found that Plaintiff's obesity may prevent her from walking long distances [id. at 38], but who concluded that Plaintiff could walk four hours of an eight-hour work day with normal breaks [id. at 42]).

Accordingly, the Court finds that the ALJ properly considered Plaintiff's obesity in the RFC assessment and **GRANTS** Defendant's motion for summary judgment on this ground and **DENIES** Plaintiff's motion for summary judgment on this issue.  See Francisco v. Colvin, 2016 WL 922654, at *13 (S.D. Cal., Feb. 8, 2016) (finding that the ALJ's failure to address plaintiff's obesity was not reversible error where plaintiff (1) was represented by counsel before the ALJ, (2) did not bring up her obesity at her hearing or in her disability application, (3) failed to identify evidence demonstrating that her obesity exacerbated other symptoms, and (4) failed to identify evidence of functional limitations due to obesity which would have impacted the ALJ's analysis) (citing Burton v. Astrue, 310 F. App'x. 960, 961 n.1 (9th Cir. 2009) (rejecting argument that ALJ failed to adequately consider obesity where ALJ did consider obesity in his overall assessment and claimant failed to specify how his obesity limited his functional capacity); Hoffman v. Astrue, 266 F. App'x. 623, 625 (9th Cir. 2008) ("The ALJ's failure to consider [the claimant's] obesity in relation to his [residual functional capacity] was proper because [the claimant] failed to show how his obesity in combination with another impairment increased the severity of his

19cv1328-BLM

limitations.")); see also Aguilar v. Colvin, 2014 WL 1653109, at *6–7 (S.D. Cal., Apr. 22, 2014) (finding that the "Magistrate Judge correctly concluded that the ALJ was not required to specifically address the impact of obesity on Aguilar's ailments because Aguilar did not sufficiently raise the issue" and that nothing in the record should have alerted the ALJ to raise the issue and develop the record further where plaintiff who was represented by counsel "did not list obesity as a basis for the disability application and did not present evidence that it impaired her ability to work [and] [n]o physician attributed functional limitations to obesity, and [plaintiff] did not present evidence to suggest that obesity caused any functional limitations").

### C.   Subjective Symptom Testimony

Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's subjective complaints as required because the ALJ failed to set forth clear and convincing reasons for discrediting Plaintiff's allegations and failed to point to any evidence that contradicted Plaintiff's testimony. Pl.'s Mot. at 16-18.

Defendant contends that the ALJ properly considered Plaintiff's subjective allegations and therefore assigned Plaintiff a restrictive RFC. Def.'s Mot. at 11.  The ALJ's findings that the medical evidence, medical opinions, and Plaintiff's demonstrated capabilities failed to support additional limitations constituted specific and legitimate reasons supported by substantial evidence to discount the disabling degree of limitations Plaintiff alleged.  Id.  Defendant notes that the ALJ found Plaintiff's alleged symptoms to be inconsistent with the medical evidence not unsupported by the medical evidence which alone is a valid reason to discount a claimant's allegations.  Id. at 13-14.  Defendant further notes that six physicians found that Plaintiff was more capable than Plaintiff herself alleged and that Plaintiff fails to explain how the ALJ committed reversible error by relying on those medical opinions.  Id. at 14.

### 1.   Relevant Law

The Ninth Circuit has established a two-part test for evaluating a claimant's subjective symptoms.  See Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms

1   alleged." Id. (internal quotation marks and citation omitted).  The claimant, however, need not

2   prove that the impairment reasonably could be expected to produce the alleged degree of pain

3   or other symptoms; the claimant need only prove that the impairment reasonably could be

4   expected to produce some degree of pain or other symptom.  Id.  If the claimant satisfies the

5   first element and there is no evidence of malingering, then the ALJ "can [only] reject the

6   claimant's testimony about the severity of her symptoms . . . by offering specific, clear and

7   convincing reasons for doing so." Id. (internal quotation marks and citation omitted).  "General

8   findings are insufficient; rather, the ALJ must identify what testimony is not credible and what

9   evidence undermines the claimant's complaints." Reddick, 157 F.3d at 722 (quoting

10  Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).  The ALJ's findings must be "sufficiently

11  specific to permit the court to conclude that the ALJ did not arbitrarily discredit [Plaintiff's]

12  testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).

13          When weighing the claimant's testimony, "an ALJ may consider . . . reputation for

14  truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities,

15  and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed

16  course of treatment." Orn v. Astrue, 495 F.3d 625, 636 (9th Cir. 2007) (internal quotation marks

17  and citation omitted).  An ALJ also may consider the claimant's work record and testimony from

18  doctors and third parties regarding the "nature, severity, and effect of the symptoms" of which

19  the claimant complains. Thomas, 278 F.3d at 958–59 (internal quotation marks and citation

20  omitted); see also 20 C.F.R. § 404.1529(c).  If the ALJ's finding is supported by substantial

21  evidence, the court may not second-guess his or her decision. See Thomas, 278 F.3d at 959;

22  Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162-63 (9th Cir. 2008) (where the ALJ's

23  credibility assessment is supported by substantial evidence, it will not be disturbed even where

24  some of the reasons for discrediting a claimant's testimony were improper).

25          Neither party contests the ALJ's determination that Plaintiff has the following severe

26  impairments: "obesity, dysfunction of major joints; degenerative disc disease; ankylosing

27  spondylitis or other spondyloathropathies; affective disorders; anxiety disorders; and ADHD (20

28  CFR 404.1520(c) and 416.920(c))." AR at 12.  Because the ALJ determined that Plaintiff's

22

1  "medically determinable impairments could reasonably be expected to cause the alleged
2  symptoms"—a finding that is not contested by either party—the first prong of the ALJ's inquiry
3  regarding Plaintiff's subjective symptoms is satisfied.  Id. at 16; see also Lingenfelter, 504 F.3d
4  at 1036; Pl.'s Mot.; Def.'s Mot.  Furthermore, neither party alleges that the ALJ found that
5  Plaintiff was malingering.  See Pl.'s Mot.; Def.'s Mot.  As a result, the Court must determine
6  whether the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective
7  claims regarding her symptoms.  See Lingenfelter, 504 F.3d at 1036.

8         The ALJ identified two reasons for discounting Plaintiff's subjective claims.  See AR at 15-
9  20.  The Court will consider each reason individually.

10        2.    Specific Testimony

11        As an initial matter, the Court finds that the ALJ failed to identify the specific statements
12 Plaintiff made that the ALJ decided were not credible, and thus does not provide the necessary
13 information for meaningful judicial review.  See Brown-Hunter v. Colvin, 806 F.3d 487, 492  (9th
14 Cir. 2015) ("If the ALJ fails to specify his or her reasons for finding claimant testimony not
15 credible, a reviewing court will be unable to review those reasons meaningfully without
16 improperly 'substitut[ing] our conclusions for the ALJ's, or speculat[ing] as to the grounds for
17 the ALJ's conclusions.'") (citation omitted).

18        In the ALJ's written decision, he acknowledged his duty to consider Plaintiff's symptoms
19 and make a finding on the credibility of the statements based on a consideration of the entire
20 case record.  AR at 15.  Then he paraphrased some of Plaintiff's testimony and statements of
21 record as follows:

22        At hearing, the claimant testified she last worked in May 2011 when she worked
23        as an office manager at a muffler shop.  The claimant reported she stopped
24        working at the job because getting in and out of cars caused back spasms and
25        pain.  The claimant testified she experiences pain from her back and lower back
26        to her ribs and that her pain varies from day to day.  The claimant also reported
27        she has kidney disease and that her doctors advised her she is not a candidate for
28        surgery for her back because of this condition.  The claimant stated she has
          stiffness in her joints.  The claimant also stated doctors prescribed the medicine
          Humira to treat her symptoms and that the medication helped her symptoms, but

23

did not entirely relieve them.  The claimant estimated she can walk for about five minutes and reported she has difficulties stooping and kneeling.

Id.   Next, the ALJ stated that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not consistent with the medical evidence and other evidence in the record."  Id. at 16.  The next two pages are devoted to summarizing the medical evidence in the record and explaining how the evidence supports the RFC.  Id. at 16-18.   The ALJ next summarizes the objective medical evidence regarding Plaintiff's mental health.  Id. at 18.  He then summarizes the medical opinion evidence and notes how that evidence is consistent with Plaintiff's activities of daily living such as preparing meals, cleaning, grocery shopping, and driving.  Id. at 19-20.  The ALJ concludes by stating that Plaintiff's activities of daily living are not consistent with FNP Remigio's opinion and that "the above residual functional capacity assessment is supported by the totality of the evidence in the record."  Id. at 20.

The ALJ's vague references to Plaintiff's statements as "allegations of disabling symptoms [id. at 16]" and "allegations of disabling mental limitations [id. at 18]" are not specific identifications of which statements are being discredited.  Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001) (holding that "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony.").  Plaintiff made numerous statements in her testimony about her pain and other symptoms, and the ALJ failed to specify which statements he did not believe and to connect each statement to the evidence that undermined it.  AR at 10-22.  The ALJ attempts to highlight specific statements but fails because he does not explain why the statements are not credible or link them to parts of the record supporting his finding that the statements are not credible.  Because the ALJ failed to properly identify the statements he found not credible and the specific evidence that undermines Plaintiff's specific subjective testimony, the Court is unable to evaluate the adequacy or legitimacy of the ALJ's findings.  For example, when evaluating the medical opinions, the ALJ connects some of Plaintiff's symptom testimony to the evidence, but not to show that he did not

find the testimony credible or that the evidence undermined Plaintiff's testimony.  Id. at 19-20. In fact, in those instances, the ALJ summarized select portions of Plaintiff's testimony and implied that they were credible when he concluded that the selected portions were consistent with the findings of Drs. Sabourin and DDS medical and psychological consultants, whose opinions he assigned great weight.  Id.  Similarly, when discussing Plaintiff's mental impairments with respect to interacting with others, the ALJ observed that Plaintiff presented at the hearing as polite and cooperative and was able to respond to questions appropriately.  Id. at 14.  The ALJ noted that Plaintiff reported that that she spends time with others by texting or sometimes talking on the phone.  Id.  The ALJ then described Dr. Matthew's findings that Plaintiff was anxious, friendly, cooperative, with normal speech, body movements and good contact and that Plaintiff had fair relationships.  Id.  The ALJ found that a mild limitation was appropriate.  Id.  The ALJ does not explain how the time Plaintiff spends texting or speaking on the phone or her polite and cooperative appearance diminishes her credibility or how that reported activity is undermined by Dr. Matthew's findings.  Id.  With respect to adapting or managing oneself, the ALJ noted that Plaintiff reported that she lives with her son, climbs a flight of stairs to reach her condo, cooks, does laundry, walks, takes her son to school, sleeps, showers, and drives her son to baseball practice.  Id.  The ALJ did not raise any concerns about the credibility of these statements or conflicts with the medical evidence and found that a mild limitation was warranted.[9]  Id.

With respect to concentrating, persisting, or maintaining pace, the ALJ noted that Plaintiff reported that she can pay attention for five to ten minutes, pay bills, count change, and use a checkbook or money orders but frequently does not complete tasks.  Id.  The ALJ then stated that Dr. Matthew reported that Plaintiff could spell music forward and backward and could perform Serial 3s but not Serial 7s.  Id.  The ALJ does not explain if, how, or why the ability to complete serial 3s or to spell music backward and forward makes Plaintiff's testimony regarding

---

[9] As described later in more depth, the ALJ does not mention the qualifications on these activities that Plaintiff also testified about or reported.  See infra at 26-32.

her inability to complete tasks less credible. Id. This lack of explanation is exacerbated by the ALJ's finding that a moderate limitation is warranted. Id. With respect to understanding, remembering, or applying information, the ALJ notes Plaintiff's testimony that she does not follow written instructions well and needs spoken instruction repeated if there is more than one instruction. Id. at 13. The ALJ then states that Dr. Matthew found Plaintiff to be oriented as to time, place, person, and purpose. Id. Dr. Matthew also found that Plaintiff did not exhibit looseness of association, thorough disorganization, flight of ideas, thought blocking, tangentiality or circumstantiality. Id. Plaintiff has no delusions, thought broadcasting, thought insertion, phobias, obsessions, derealizations, and depersonalization. Id. She was also able to recall 3/3 objects in five minutes and what she ate for breakfast, lunch and dinner. The ALJ found that a moderate limitation is appropriate. Id. at 13-14. Again, the ALJ fails to explain what part of Plaintiff's testimony is not credible and how that is supported by Dr. Matthew's findings. It is unclear from the ALJ's order why a lack of delusions or phobias for example, discredits Plaintiff's testimony that she does not follow written instruction well.

The Court finds that the ALJ committed legal error by failing to identify the specific testimony found not credible and by failing to identify the specific evidence that undermined the identified testimony. See Brown-Hunter, 806 F.3d at 494 ("Because the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination. This was legal error."); Lingenfelter, 504 F.3d at 1036 (The Court must therefore determine whether the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective claims regarding his symptom."). Because of these failures, the ALJ's conclusions concerning Plaintiff's RFC are not supported by substantial evidence. See Trevizo, 871 F.3d at 674 ("We set aside a denial of Social Security benefits only when the ALJ decision is based on legal error or not supported by substantial evidence in the record." (internal quotation marks and citation omitted)). Even if the ALJ had adequately specified the testimony he found not believable, the ALJ's proffered reasons fail to meet the clear and convincing standard, for the reasons set forth below.

///

19cv1328-BLM

### 3.   Activities of Daily Living

Plaintiff argues that the ALJ "undermined Plaintiff's pain allegations because she was able to perform daily activities such as cleaning, laundry and driving.  However, the mere fact that a Plaintiff carries out some level of daily activities does not in any way detract from the credibility of her alleged symptoms." Pl.'s Mot. at 18 (internal citations omitted).  Defendant contends that the ALJ properly concluded that the weight of the medical evidence, medical opinions, and Plaintiff's demonstrated capabilities constituted specific and legitimate reasons supported by substantial evidence to discount Plaintiff's alleged limitations.  Def.'s Mot. at 11.

In determining a plaintiff's credibility, an ALJ may consider whether a plaintiff's daily activities are consistent with the asserted symptoms.  See Thomas, 278 F.3d at 958–59 (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir.1997)); see also SSR 96–7p (stating that "the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements: [ ] The individual's daily activities").  While the fact that a plaintiff can participate in various daily activities does not necessarily detract from the plaintiff's credibility as to her specific limitations or overall disability, "a negative inference is permissible where the activities contradict the other testimony of the claimant, or where the activities are of a nature and extent to reflect transferable work skills." Elizondo v. Astrue, 2010 WL 3432261, at *5 (E.D. Cal. Aug. 31, 2010). "Daily activities support an adverse credibility finding if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions or skills that are transferable to a work setting." Id. (citing Orn, 495 F.3d at 639; Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir.1999); Thomas, 278 F.3d at 959). "A claimant's performance of chores such as preparing meals, cleaning house, doing laundry, shopping, occasional childcare, and interacting with others has been considered sufficient to support an adverse credibility finding when performed for a substantial portion of the day." Elizondo, 2010 WL 3432261, at *5 (citing Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008); Burch, 400 F.3d at 680–81; Thomas, 278 F.3d at 959; Morgan, 169 F.3d at 600; Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990)).

Plaintiff testified that she (1) drives her car approximately 9,000 miles per year, (2) does

1  all of the cooking for herself and her fourteen year old son, (3) does the laundry, (4) cleans the

2  house, (5) enjoys walking as a hobby, and (6) climbs a flight of stairs to enter the condo where

3  she lives  AR at 1102-1115.  She also testified that she can only walk for five minutes or less at

4  a time, cannot complete a load of laundry in one sitting, cannot stand from a stooping position

5  unless she has something to pull herself up on, and cannot kneel because of her knee.  Id. at

6  1114-1115.

7         In her September 6, 2015 Adult Function Report, Plaintiff wrote that she gets dressed

8  each morning, prepares her son's breakfast (cereal), takes him to school, comes home and rests

9  before making some phone calls or taking care of paperwork. Id. at 250.  She also takes care

10 of her pet fish, picks her son up from school, and takes him to baseball practice.[10]  Id.  She is

11 able to dress herself each morning and shower, but it is difficult to put on her pants and

12 undergarments and to reach her feet in the shower.  Id.  She gets easily winded when washing

13 up and has to take long breaks when curling her hair.  Id.  She is only able to shave twice a

14 month and has difficulty wiping after using the toilet.  Id.  She relies on post it notes, pill

15 containers, and a phone app to remember to take her medication.  Id. at 251.  It takes Plaintiff

16 2-3 hours to prepare a meal in the kitchen when she cooks, but she typically makes frozen

17 dinners or fruit and vegetable smoothies.  Id.  Plaintiff needs help unloading the dishwasher,

18 getting clothes out of the dryer, and cleaning and organizing her refrigerator.  Id.  She goes to

19 the store to shop for groceries, but is often unable to complete her shopping in one trip.  Id. at

20 252.  Plaintiff is able to pay her bills, count change, and use her checkbook or money orders.

21 Id.  Plaintiff enjoys watching television, being in the sun, reading, crafts, and bead projects.  Id.

22 at 253.  However, she does not have cable television, cannot be in the heat or sun because she

23 will overheat too quickly, has trouble sitting for more than one or two pages of a book, and can

24 no longer sit long enough to complete a craft or bead project.  Id.

25        In reaching his decision to discount Plaintiff's symptom testimony, the ALJ summarized

26 the findings of Dr. Sabourin, and Dr. Binoj, a DDS Medical Consultant, and a DDS Psychological

27 _____

28 [10] Plaintiff reports that she cannot sit through an entire little league baseball game.  AR at 253.

1    Consultant and then noted how those opinions were consistent with Plaintiff's activities of daily

2    living.  Id. at 19-20.  While performing his analysis, the ALJ highlighted Plaintiff's reported

3    activities such as climbing one flight of stairs to her condominium, preparing daily meals,

4    performing chores such as laundry, cleaning, grocery shopping, driving her son to and from

5    school and baseball practice, handling her finances, going on walks, reading, crafting, and

6    beading.  Id.  The ALJ found these activities consistent with the RFC that he found and with the

7    opinions of Drs. Sabourin and Binoj and the DDS Psychological Consultant.  Id.  In doing so, the

8    ALJ did not address the fact that in the same document and testimony that he cites to, Plaintiff

9    qualified many of her statements and noted that (1) she can only walk for five minutes or less

10    [id. at 1115], (2) her daily meal preparation consists mostly of frozen meals, smoothies in a

11    bullet blender, and cereal, and that "boiling noodles is major cooking type meals [id. at 251],"

12    (3) she cannot complete a load of laundry in one sitting, requires help to remove clothes from

13    the dryer, and typically can wash the clothes, but not get them folded or put away[11] [id. at 251,

14    257, 1115], (4) she cannot complete all of her grocery shopping in one trip [id. at 252], (5)

15    while she can drive, she can't sit for long and it causes pain and her arms to go numb from

16    holding the steering wheel, (6) she can no longer sit long enough to complete craft projects or

17    to read more than one or two pages due to back and neck pain, swelling and stiffness [id. at

18    253], and (7) she cannot sit through an entire one of her son's little league baseball games [id.].

19           The fact that Plaintiff can perform these limited activities with difficulty and pain does not

20    constitute a clear and convincing reason for negating any specific statement made by Plaintiff

21    or Plaintiff's general claim that she is unable to work.  The Ninth Circuit has "repeatedly warned

22    that ALJs must be especially cautious in concluding that daily activities are inconsistent with

23    testimony about pain, because impairments that would unquestionably preclude work and all

24    the pressures of a workplace environment will often be consistent with doing more than merely

25

26    [11] Specifically, Plaintiff testified that "[d]oing laundry is one of the worst things" and that if she

27    is "doing laundry, the sorting of it and then washing it, I can guarantee it won't get folded or completely dry all the time."  Id. at 1115.

28

resting in bed all day." Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014).  The ALJ also fails to address how Plaintiff's limitations are consistent with the ability to perform light work[12] and there is no evidence that Plaintiff is performing the daily activities described for a "substantial portion of the day" and, in fact, based on Plaintiff's testimony and Adult Function Report, the opposite is true. Elizondo, 2010 WL 3432261 at *5; see also AR at 1114-1115, 250-253.  Plaintiff's limited activities, done with pain initially and subsequently discontinued, followed by feelings of exhaustion, stiffness, and soreness, are consistent with the pain and other symptoms that Plaintiff described in her testimony and do not support the ALJ's conclusion.  Nor are these activities per se evidence of a capability of performing sustained work. See Bennett v. Barnhart, 60 Fed. Appx. 135, 137 (9th Cir. 2003) (citing Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication.")). The ALJ fails to explain how the daily activities described by Plaintiff transfer into a work setting. An ALJ "must make specific findings relating to the daily activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." Christine G. v. Saul, 402 F.Supp.3d 913, 929 (C.D. Cal. 2019) (quoting Orn, 495 F.3d at 639 (citation and alteration omitted)); see also White v. Colvin, 2014 WL 4187823, *7 (C.D. Cal., Aug. 21, 2014) (ALJ must "specify how plaintiff's ability to perform such tasks would translate into an ability to perform gainful employment.").  For the reasons set forth above, the Court finds that the supposed inconsistency between Plaintiff's testimony and her activities of daily living does not satisfy the requirement of a clear and convincing reason to find Plaintiff's claims of pain and limiting symptoms unbelievable.  See Garrison, 759 F.3d at 1016 (finding daily activities

---

[12] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567.

1    performed with assistance and accompanied by long rests as consistent with the plaintiff's pain-

2    related testimony, and not a clear and convincing reason to discredit the testimony).

3         4.    Inconsistent with Medical Evidence

4         The ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting

5    effects of [her] symptoms are not consistent with the medical evidence and other evidence in

6    the record." AR at 16.  Plaintiff argues that because there is objective medical evidence of an

7    underlying severe impairment, the ALJ "is not permitted to discredit Plaintiff's symptom

8    complaints, 'merely because they are unsupported by objective medical evidence." Pl.'s Mot. at

9    18 (quoting Bunnell, 947 F2d. at 347-348).

10        Defendant contends that the ALJ properly considered Plaintiff's subjective allegations and

11   accordingly assessed a restrictive RFC. Def.'s Mot. at 11.  Defendant notes that the medical

12   evidence showed mild findings and a large range of normal findings which properly comported

13   with Plaintiff's RFC. Id. at 12.  Defendant further notes that the ALJ discounted Plaintiff's claims

14   as inconsistent with the medical evidence, not unsupported by the medical evidence and that

15   inconsistency with the medical evidence alone is a valid reason for the ALJ to discount Plaintiff's

16   subjective allegations.  Id. at 13-14.   Finally, Defendant contends that Plaintiff's failure to

17   address the fact that the bulk of the medical evidence "undermined the degree of limitations

18   she alleged" is fatal to her argument. Id. at 14-15.

19        The ALJ generally stated that the effects of the symptoms that Plaintiff described were

20   not consistent with the medical evidence and other evidence in the record, but he failed to

21   specifically identify any inconsistencies.  Instead, the ALJ summarized the medical findings for

22   Drs. Sabourin, Lee, Laiken, and Matthew and described how those findings were consistent with

23   Plaintiff's reported activities.  Id. at 19-20.  In doing do, the ALJ focused only on the activities

24   Plaintiff testified to and reported that she engaged in without addressing any of the numerous

25   limitations on those activities due to her symptoms that Plaintiff also reported.  Id.  The only

26   inconsistency noted by the ALJ was with the findings of FNP Remigio and Plaintiff's daily activities

27   which again failed to consider the limitations reported by Plaintiff.  Id. at 20.  The ALJ's failure

28   to address the limitations identified by the Plaintiff and to state what medical evidence

1    undermines Plaintiff's credibility as to the specific limitation(s) is fatal to his conclusion.

2            Here, the ALJ stated his RFC determination for Plaintiff, claimed that the objective and

3    clinical medical evidence of record does not support the claimant's allegations of disabling

4    limitations to the extent alleged, and then he essentially recited the medical evidence that

5    support his RFC finding.  Id. at 16-17.  The ALJ's focus on the connection between the medical

6    evidence and the RFC, instead of Plaintiff's testimony, failed to provide specific, clear, and

7    convincing reasons for disbelieving specific statements from Plaintiff's testimony.  See Brown-

8    Hunter, 806 F.3d at 489 ("We hold that an ALJ does not provide specific, clear, and convincing

9    reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support

10   of his or her residual functional capacity determination.").  Even if the ALJ had shown that

11   inconsistency with the medical evidence was a clear and convincing reason for rejecting Plaintiff's

12   symptom testimony, it cannot be the sole factor.  See Reddick, 157 F.3d at 722 (citing Bunnell,

13   947 F.2d 341, 343 (9th Cir. 1991).  Thus, this reason is not sufficient as there is not at least one

14   other reason provided by the ALJ for rejecting Plaintiff's subjective symptoms.

15           5.    Conclusion

16           The ALJ failed to identify the specific statements or claims made by Plaintiff that he found

17   were not credible and to tie the allegedly contradicting or undermining evidence to the specific

18   statement.  The ALJ also failed to provide clear and convincing reasons for discounting Plaintiff's

19   subjective claims regarding her symptoms. Finally, the ALJ failed to consider the numerous

20   limitations Plaintiff testified about regarding her activities of daily living and to establish that

21   Plaintiff's daily activities are transferable to a work setting and are performed for a substantial

22   part of the day and on a daily basis.  Accordingly, the Court finds that the ALJ has not set forth

23   a clear and convincing reason to reject Plaintiff's subjective testimony and **GRANTS** Plaintiff's

24   motion and **DENIES** Defendant's motions on this issue.

25                                    **REMAND v. REVERSAL**

26           "The decision whether to remand for further proceedings or simply to award benefits is

27   within the discretion of [the] court."  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989)

28   (internal citation omitted).  "Remand for further administrative proceedings is appropriate if

32

1   enhancement of the record would be useful." <u>Benecke v. Barnhart</u>, 379 F.3d 587, 593  (9th Cir.

2   2004).  On the other hand, if the record has been fully developed such that further administrative

3   proceedings would serve no purpose, "the district court should remand for an immediate award

4   of benefits." <u>Id.</u> "More specifically, the district court should credit evidence that was rejected

5   during the administrative process and remand for an immediate award of benefits if (1) the ALJ

6   failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding

7   issues that must be resolved before a determination of disability can be made; and (3) it is clear

8   from the record that the ALJ would be required to find the claimant disabled were such evidence

9   credited." <u>Id.</u> (citing <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir. 2000)).  The Ninth Circuit

10  has not definitely stated whether the "credit-as-true" rule is mandatory or discretionary. <u>See</u>

11  <u>Vasquez v. Astrue</u>, 572 F.3d 586, 593 (9th Cir. 2009) (acknowledging that there is a split of

12  authority in the Circuit, but declining to resolve the conflict); <u>Luna v. Astrue</u>, 623 F.3d 1032,

13  1035 (9th Cir. 2010) (finding rule is not mandatory where "there are 'outstanding issues that

14  must be resolved before a proper disability determination can be made'" (internal citation

15  omitted)); <u>Shilts v. Astrue</u>, 400 F. App'x 183, 184-85 (9th Cir. Oct. 18, 2010) (explaining that

16  "evidence should be credited as true and an action remanded for an immediate award of benefits

17  only if [the <u>Benecke</u> requirements are satisfied]" (internal citation omitted)).  "Even if all three

18  requirements are met, the Court retains flexibility to remand for further proceedings 'when the

19  record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within

20  the meaning of the Social Security Act.'" <u>Nichols v. Saul</u>, 2019 WL 6252934, at *10 (S.D. Cal.,

21  Nov. 22, 2019) (quoting <u>Brown-Hunter</u>, 806 F.3d at 495).  A remand for an immediate award of

22  benefits is appropriate only in rare circumstances.  <u>Id.</u>

23       Here, based on the record before it, the Court concludes that the rare circumstances that

24  may result in a direct award of benefits are not present in this case. <u>Leon v. Berryhill</u>, 880 F.3d

25  1041, 1044 (9th Cir. 2017) ("[a]n automatic award of benefits in a disability benefits case is a

26  rare and prophylactic exception to the well-established ordinary remand rule").  Instead, the

27  Court finds further administrative proceedings would serve a meaningful purpose so that

28  Plaintiff's testimony and FNP Remigio's findings may be properly evaluated.

19cv1328-BLM

1      Therefore, this Court **REVERSES** the ALJ's decision and **REMANDS** for further
2  proceedings to address the errors noted in this Order.

3      **IT IS SO ORDERED**.

4  Dated:  8/14/2020

Hon. Barbara L. Major
United States Magistrate Judge

34

19cv1328-BLM